# HENRY HILLMAN, Respondent, v. GRAYS POINT TERMINAL RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, March 3, 1903.

1. **Railroad: FENCING RIGHT OF WAY OF RAILROAD: NEGLIGENCE: STATUTORY CONSTRUCTION.** Under the provisions of section 2867, Revised Statutes 1899, a railroad company may fence or not, in its discretion, but if it fails to fence where it may properly do so, its action in such regard is at its own risk under peril of the application of this statute dispensing with proof of negligence, if stock be injured.

2. ———: ———: ———. In the construction of the statutes relating to fencing by railroads, the courts have excepted by necessary intendment from their application, such grounds as are required to remain open for the use of the public and the transaction of the business at the railroad depot station.

3. ———: ———: ———. Facts as to necessity of fencing are not to be determined by the railroad company under section 2867, Revised Statutes 1899, as a railroad company can not arbitrarily determine for itself whether a space uninclosed, claimed for station use and switch limits, was necessary for the convenient transaction of its business and accommodation of the public, and where the evidence introduced, tended to show that the railroad might have fenced its road, where the plaintiff's animal strayed upon its track, without causing inconvenience to the railway or those having business to transact with it at such point, the jury should determine the question of the necessity of the land uninclosed for such uses.

4. ———: ———: ———: JURY: COURT: PRACTICE, TRIAL. And in the case at bar, there was no such evidence; and while it is the province of the jury to determine all questions of fact, it is likewise the province of the court to determine all questions of law, especially whether there is any evidence entitling the submission of issues of fact to the jury.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

*S. H. West* and *W. H. Miller* for appellant.

(1)   A simple inspection of the plat of the railroad yards and grounds shows the absurdity of the position that these yards might lawfully be fenced. And when the plat was conceded to be correct and that the animal was killed in these yards, the court should then and there have given defendant's peremptory direction to the jury to find the issues for the defendant. (2)   For a still greater reason should the peremptory instruction asked by defendant at the close of all the evidence have been given. (3)   The jury found that the defendant should have fenced off from the outside world a village of from 300 to 400 people and its terminal yards in which there was several miles of tracks, and this without the evidence of a single witness testifying directly to the feasibility of such a thing.

*H. C. O'Bryan* for respondent.

(1)   This action is brought under section 2867, Revised Statutes 1899, and was formerly known as fifth section of Damage Act.   Under this section the courts have repeatedly held it is not necessary to allege or prove negligence on the part of defendant further than that a fence could lawfully have been built and maintained, but that it was not done.   Edwards v. Railroad, 66 Mo. 567; Russell v. Railroad, 83 Mo. 510; Wymore v. Railroad, 79 Mo. 247.   (2)  The court properly overruled defendant's objection to the introduction of testimony under this petition, for it fully meets all that has been required of a petition in the above cases. When the animal is killed in the yards, the company is prima facie  exonerated, etc., says  defendant, but avoids citing any law bearing out that statement, while the cases cited above show they must  fence  yards, switches, and depot grounds when practicable.   In the case of Bean v. Railroad, the defendant asked "that if the cow was killed within the switch limits of the town of Irondale the plaintiff can not recover," which

was refused and the court said rightly. The fact of injury and that the road was not fenced when it occurred, make a prima facie case against the company, under the section this action was brought. Wymore v. Railroad, 79 Mo. 249. (3) Appellant's fifth contention is that instruction No. 2 given for plaintiff and instruction No. 3 given for defendant conflict. Instruction No. 3 given for appellant places the burden of proof on the plaintiff. The burden of proving the allegations of the petition rested on the plaintiff, but the burden of proving the necessity of leaving the tracks unfenced rested on the defendant. Crenshaw v. Railroad, 54 Mo. App. 235.

REYBURN, J.—This is a suit commenced before a justice of the peace in Scott county, to recover damages for the value of a bull killed by defendant in the operation of its railroad. On appeal to the circuit court a trial was had before a jury, which rendered a verdict for plaintiff, and defendant has appealed to this court. The statement set forth that on the 16th of June, 1900, defendant was operating a railroad in Kelso township, Scott county; that on that day a Jersey bull owned by plaintiff, valued at $65, was run over and killed by the engine and cars of defendant; that the place at which the bull went upon the railroad and was killed was not at a point where the railroad was inclosed by a lawful fence, nor at the crossing of any public highway, and that the animal went upon the railroad and was killed at a place where the defendant might have lawfully erected and maintained fences on the sides of its railroad sufficient to prevent animals from getting on the road, but had failed to erect and maintain such fences, whereby the plaintiff had sustained the damages. The evidence in the case was brief, substantially undisputed, and established that Graysboro, an unincorporated town at the terminus of

defendant's railroad on the Mississippi river, was divided into what was called Graysboro and Graysboro Addition or Grays Point, or the old town and the new town. Graysboro not being legally organized, had no town government, no streets laid out, but there was a wagon road running along the defendant's main track through its yards to the depot, which road, however, was not a public road, and there was a crossing near the depot used for wagons and the people going to and from the depot and from one part of the town to the other. The animal was killed in the yards of defendant, and its value and the place where it was killed were not disputed. The section of the statute under which this action is brought imposes no obligation upon a railroad to fence anywhere, but was intended to hold out an inducement for the railroads to fence their track where it was not deemed absolutely necessary to compel them by law to do so. Sec. 2867, R. S. 1899, p. 730. While the act does not require the railroad company to erect any fence, yet it relieves the plaintiff in a suit for damages for stock killed from the usual burden of proof of negligence, except where such accident occurred at a portion of the railroad inclosed by a lawful fence, or at the crossing of any public highway, and makes proof of the fact of the injury and that the road was not fenced at the place of its occurrence, a prima facie case against the railroad. A railroad may fence or not, in its discretion, but if it fails to fence where it may properly do so, its action in such regard is at its own risk under peril of the application of this statute dispensing with proof of negligence, if stock be injured. Tiarks v. Railroad, 58 Mo. 45; Wymore v. Railroad, 79 Mo. 247; Young v. Railroad, 79 Mo. 336; Radcliffe v. Railroad, 90 Mo. 127.

In the construction of the statutes relating to fencing by railroads, the courts have excepted by necessary intendment from their application such grounds as are required to remain open for the use of the public and

the transaction of the business at the railroad depot or station. Morris v. Railroad, 58 Mo. 78; Johnson v. Railroad, 27 Mo. App. 379; Russell v. Railroad, 26 Mo. App. 368; Lloyd v. Railroad, 49 Mo. 199.

Under this section a railroad can not arbitrarily determine for itself the question whether a space un-inclosed claimed for station use, depot purposes and switch limits, was necessary for the convenient and safe transaction of its business and for the accommodation of the public, but where evidence has been introduced tending to show that the railroad might have fenced its road where the plaintiff's animal strayed upon its railway track without causing inconvenience to the railway or to those having business to transact with it, or to the public at such point, the jury should determine the question of the necessity of the land un-inclosed for such uses. Straub v. Eddy, 47 Mo. App. 189. But in the case under consideration there is no such evidence, and while it is the province of the jury to determine all questions of fact, it is likewise the province of the court to determine all questions of law, especially whether there is any evidence entitling the submission of issues of fact to the jury. O'Malley v. Railroad, 113 Mo. 319; Boland v. Railroad, 36 Mo. 484. The plaintiff submitted the testimony of but two witnesses, the first of whom, a son, stated he resided and did business at Grays Point at the time of the killing of the bull, and that if the railroad yards were fenced in, neither he nor his neighbors could get out without climbing a barb-wire fence, and the people living outside would have to climb two barbed-wire fences to get to his place of business, and that the business of the town could not be transacted if the railroad was fenced, without new roads; that there were about fifty-five families in the town of Graysboro, living on both sides of the railroad, and that he did not know whether it was practicable to fence up the yards and switches. The remaining witness offered by plaintiff, stated that the

depot of defendant was on the edge of the right of way and the track along the edge of the platform, that the town was divided into Graysboro and Graysboro Addition, the addition to Graysboro was on the east side of the main track of the railroad, and Graysboro proper on the west side; that in June, 1900, there were three or four hundred people living there, and a good many people living north of the depot; that if the fence was built as suggested, the people could not get to and from the two towns without climbing the barbed-wire fence, that they could neither get in nor out, and that they could not get freight to or from the railroad depot, and that there were stores on both sides of the depot, and the two parts of the town would then be without communication with each other; that the road running east of the main track was the only way for people to get to and from Graysboro, and to and from the depot, although it was not a public road, but was in common use and the only means of getting to and from the town; that a person could not get to Graysboro if the fence was built around as indicated by the plaintiff, and that if the road was fenced a new road might be built to get to the old town, but access to the new town would be cut off. Thus, the plaintiff's testimony, conclusively establishes that no fencing could have been made at the place where the animal was killed without serious inconvenience of the public in the transaction of its business, and in the communication between the two sections of the town, as well as interfering with the operation of the railroad and its business with the public. The trial court, therefore, erred in not withdrawing the case from the consideration of the jury by giving the instructions asked at the close of the evidence, and its judgment will be accordingly reversed. *Bland, P. J.,* and *Goode, J.,* concur.